CARIBE NITROGEN CORPORATION, Appellant, *v.* THE REGISTRAR OF PROPERTY OF SAN GERMÁN, Respondent.

No. 1389.   Decided January 29, 1963.

*Sifre & Ruiz Suria* and *Abelardo Ruiz Suria* for appellant.   The respondent registrar appeared by brief.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

Caribe Nitrogen Corporation, formerly González Chemical Industries, Inc., executed a first mortgage on August 1, 1955

160

on two immovables located in the municipality of Guánica. This mortgage was recorded in the Registry of Property of San Germán on November 9, 1955. By subsequently executed public documents, the principal guaranteed by this first mortgage was increased. The last and fifth increase is dated January 5, 1960. It was recorded on the following February 5. Thus increased, it would guarantee up to $3,500,000 in mortgage notes with interest at 6 per cent per annum to mature on January 1, 1966, as well as $910,000 in mortgage bonds termed series D. It was expressly stipulated that in order that the Series D bonds issued by appellant could share in the first mortgage security, they would have to be authenticated by the trustees who, pursuant to the mortgage contract, would verify these bonds.

On August 31, 1960 appellant executed and delivered to said trustees eight (8) bonds Series D for the amount of $433,400 without interest for their authentication. These bonds were duly verified.

A document authenticated by a notary was presented to the registrar by the Caribe Nitrogen Corporation, represented by its Vice President, Harold S. King, the Chemical Bank New York Trust Company, represented by G. V. Azoy, and the Banco de Ponce, represented by Ugo J. Lisi, the latter two in their capacity of trustees. Said "Petition for the Registration of a Marginal Note" required that an entry be made on the margin of the registration of the first mortgage stating that an obligation had been assumed for the amount of $433,400 by virtue of eight Series D bonds which had been issued for that amount and verified by the trustees, as required.[1]

---

[1] Appellant executed a second mortgage, which like the first one, was increased on five occasions. The fifth increased the amount which would guarantee the second mortgage and required that in order that the bonds issued be guaranteed by this second mortgage, they had to be verified by the trustees. On the same date in which the obligation was assumed and the bonds guaranteed by the first mortgage were issued, another obligation

The registrar denied the petition. The note of refusal reads as follows:

"The preceding petition for marginal notes is hereby DENIED on the ground that it is not the authentic and public instrument contemplated by the Mortgage Law (Art. 3 M.L.) and that the authority of Mr. King and Mr. Azoy for the representation which they assume is not established, cautionary notice being entered instead for the legal term in favor of the interested parties, of their right, as to the FIRST mortgage for marginal notes on the eighth and second inscriptions of properties numbers 428 in duplicate and 471 at folios 19 reverse and 29 of volumes 16 and 17 of Guánica, respectively, and as to the SECOND mortgage for marginal notes on the 9th and 3d inscriptions of properties numbers 428 in triplicate and 471 at folios 107 reverse and 32 reverse of volumes 18 and 17 of GUÁNICA, respectively. San Germán, November 30, 1960."

It appears from the refusal of the registrar that he evidently considered the transaction made as one of execution of mortgage. And in the brief in support of his ruling he ratified this criterion. Consequently he believed that it was necessary that the transaction be put in a public deed as established by § 3 of the Mortgage Law—30 L.P.R.A. § 3. The aforesaid article provides that "In order to permit of the record of the instruments mentioned in the foregoing section, they must be embodied in a public instrument, final judgment, or authentic document, issued by a judicial authority, or by the Government or its agents, in the form prescribed in the regulations." And § 2 provides that "The following shall be recorded in the registries mentioned in the preceding section: First . . . Second. Instruments constituting . . . mortgages . . ."

Appellant alleges on the contrary that the mortgage was already constituted and duly recorded. That it was executed to

---

was assumed and the bonds to guarantee the second mortgage were issued. They were duly authenticated and like in the case of the first mortgage, it was requested that a marginal note be entered setting forth the issuance of the aforesaid bonds.

guarantee the bonds which appellant would eventually issue. And those bonds could be issued on the same day the mortgage was constituted or on any subsequent date. In support of its thesis, appellant invokes the provisions of § § 142 and 143 of the Mortgage Law—30 L.P.R.A. § § 255 and 256. The first of the afore-cited articles provides in its pertinent part:

"A mortgage constituted for the security of a future obligation or one subject to recorded suspensive conditions, shall produce its effects against third persons from the date of its record, if the obligation be contracted or the condition fulfilled."

And the second article provides:

"When the future obligation has been contracted, or when the suspensive condition mentioned in the first paragraph of the foregoing section has been fulfilled, the parties interested must cause a record thereof to be made by means of a note on the margin of the mortgage record, without which requisite the mortgage constituted can neither benefit nor prejudice third persons . . .

"The nonfulfillment of the condition, or the fact that the obligation has not been contracted, shall be recorded in the same manner."

And § 178 of the Regulations—30 L.P.R.A. § 1112 provides in its pertinent part:

"In order to record in the registry the performance or non-performance of conditions, or the fulfillment or nonfulfillment of future obligations, referred to in section 143 of the act, any of the persons interested shall present to the registrar a copy of the public document from which this appears, and in the absence of such document, a petition signed by both parties applying for the entry of a marginal note and clearly stating the grounds therefor."

The decisions of this Court have sanctioned mortgages to secure future operations. *Plant Milling Co.* v. *Navas et al.*, 22 P.R.R. 255 (1915); *Roig* v. *The Registrar*, 22 P.R.R. 586 (1915). In the first case a mortgage was con-

stituted to secure the future drafts to be drawn by the mortgage debtor to pay for merchandise bought from the mortgage creditor. In the second case a mortgage was constituted to secure the sum which the creditor would advance its debtor for the planting and grinding of sugar cane. In both cases reference was made to § § 142 and 143 of the Mortgage Law mentioned above.

The operation by which the first mortgage was constituted, with its subsequent increases, was to secure a future obligation. Appellant constituted a mortgage on two immovables to secure the bonds intended to be issued in the future. The act constituing a real right was effected when the deed for the first mortgage was constituted. The operation of issuing bonds and complying with the prerequisite that they be authenticated by the trustees, are not acts constituting a real right. This act, we repeat, was effected when the mortgage securing the bonds to be issued in the future was constituted. This is a typical case of execution of a mortgage to secure a future obligation. To this effect ROCA SASTRE states: "It is sufficient to indicate that, in general, in order to be able to speak of a future obligation although it is not necessary, of course, that the obligation *exist*, yet it is required, at least, that there be a certain *sureness* or *possibility* that the obligation will exist, or as Jerónimo González states: 'that the juridical mechanism created have sufficient *consistency* to merit the guarantee of its consequences.' " And ROCA SASTRE continues: "This certain *sureness, possibility, probability* or *consistency*, in order that it may be said that a future obligation is contemplated, may be examined from a point of view of fact as well as of law. Thus, at least in the natural order of life, it may be required that the debt be *possible*, since it is not based on an unlikely premise, for the purpose of rejecting the security of debts which positively shall not arise. And also, from a viewpoint of privity, it should be determined whether there

exists a previous *binding* situation *or preliminary nexus* between the parties which may imply the possibility of a future obligation, as set forth in the Declaration of Policy of the Act of 1861, that is, a pre-existing state of *debt in gestation*, for the purpose of eliminating from the concept of future obligation an *eventual undertaking*, to which, not even potentially, no one is bound." IV Roca Sastre, *Derecho Hipotecario* 433–434 (5th ed. 1954).

And in a Judgment of the Supreme Court of Spain of January 31, 1925—165 *Jur. Civ.* 303—it is stated respecting this type of mortgages: ". . . the mortgage in question is not a mere expectation, no matter how broad this concept may be construed, not even a potential lien, but on the contrary, it is a right of actual guarantee in favor of a probable credit, which takes a place of preference in the mortgage series, establishes a relationship of a real nature, with indisputable authenticity, and enjoys the privileges of publicity in all that does not directly refer to the existence and amount of the secured debt." See, also, Cossio y Corral, *Instituciones de Derecho Hipotecario* 318 *et seq.* (2d ed. 1956).

It having been established that the issuance of the bonds is not an act constituting a real right, but rather a future obligation guaranteed by the already recorded mortgage, § 143 of the Mortgage Law above copied provides that the parties interested "must cause a record thereof to be made by means of a note on the margin of the mortgage record, without which requisite the mortgage constituted can neither benefit nor prejudice third persons. . ."

As to how that entry is made, § 178 of the Mortgage Law Regulations as we noted, provides that any of the parties interested shall present to the Registrar a copy of the public document stating that an obligation has been assumed and in default thereof, "a petition signed by both parties applying for the entry of a marginal note and clearly stating the grounds therefor."

On May 4, 1891 a Royal Decree was issued in answer to a petition sent to the General Directorate of the Registries by the Acting Governor of the Banco Hipotecario of Spain "for the purpose of adopting an easy and economical method of recording in the Registry of Property the compliance with the precedent conditions." After considering what was expressly provided by the Regulation, it stated as follows:

"In order to set forth the compliance with the precedent conditions of a recorded mortgage, it shall suffice that any one of the interested persons or their agents, whether verbal or implied, present a petition signed by both parties or by their respective attorneys-in-fact, stating clearly the facts which give rise to the note, making reference to the mortgage deed and stating the volume and folio in which it is recorded, numbers of the inscription and of the property without having to present again the power of attorney in case the petition is signed by the same person who by virtue thereof appeared at the execution of the deed. The Registrar shall require ratification of the signers if their signatures are not attested to by the Notary. And no entry of the petition shall be made in the Diario, but the applicant shall sign the marginal note."

MORELL maintains that this Royal Decree is still effective in Spain, but "the requirement of the power of attorney may entail dangers because if the attorney-in-fact continues in such capacity, he must have said power, of attorney, its presentation being easy and if he has ceased to be such perhaps by a culpable fact, he may conspire with the other party to prejudice a third party." IV MORELL 211 (Madrid 1918). Without passing on whether the afore-cited Royal Decree is in force in Puerto Rico, the truth is that it reveals how § 178 of the Regulations should be interpreted. To this same effect: DE CASSO, *Derecho Hipotecario* 687 (4th ed., Madrid 1951); ROCA SASTRE, *op. cit.* at 439; III GALINDO Y ESCOSURA, *Comentarios a la Legislación Hipotecaria* 370 (3d ed., Madrid 1896). The document presented complies with the requirements established by § 178 of the Regulations.

■ The registrar invokes the authority of Morell to sustain that the petition mentioned in § 178 must be made in a public document. *Op. cit* at p. 212. Yet a careful examination of Morell's commentaries reveals that in the first place, he admits the effectiveness of the Royal Decree, which in fact injects life to the provisions of that article of the Regulations, and that what he states in his commentaries is that in order to establish the facts referred to in the petition, it is necessary to present the public instruments in which said facts appear. And it could not be otherwise.

■ However, the note appealed from must be sustained on the other ground alleged by the Registrar. Although it is true that the Registrar, in passing upon the document presented, must take into consideration the facts contained therein as well as the complementary documents attached thereto and the entries and antecedents in the registry related with the immovable object of the transaction, MORELL, *op. cit.* p. 259; *Nido & Cía. S. en C.* v. *Registrar*, 74 P.R.R. 737 (1954) ; *P. R. Water Resources Authority* v. *Registrar*, 71 P.R.R. 792 (1951) ; *López* v. *Registrar*, 58 P.R.R. 1 (1941) ; *Delgado* v. *Registrar*, 25 P.R.R. 450 (1917), the truth is that the complementary documents attached to the instrument presented do not establish the powers of Mr. King and Mr. Azoy. Likewise we are not in a position to determine whether former entries in the registry disclosed the power alleged.

The note appealed from will be affirmed.